# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JAMEL WHITESIDE,

        Plaintiff,

    v.                                    Case No. 11-CV-279

KHALID MAJEED,

        Defendant.

## DECISION AND ORDER FOR JUDGMENT

On November 19, 2012, a trial to the court was conducted in this action. Having now considered the testimony, the exhibits, and the submissions of the parties, the following constitutes the court's findings of fact and conclusions of law in accordance with Federal Rule of Civil Procedure 52.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to General Local Rule 3(a) (E.D. Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73 (E.D. Wis.).[1]

### I. Parties and Witnesses

The plaintiff, Jamel Whiteside ("Whiteside"), was a pretrial detainee at the Milwaukee County Correctional Facility - Central ("Jail") located in Milwaukee, Wisconsin, at all times relevant.

---

[1] The plaintiff in this action, Jamel Whiteside, was represented on a pro bono basis by Attorney Victoria L. Davis of the law firm of Pledl & Cohn, S.C. Attorney Davis was a splendid advocate for Mr. Whiteside. The court extends its sincere appreciation to Attorney Davis and to Pledl & Cohn, S.C. for Attorney Davis's service both to Mr. Whiteside, as well as to the interests of justice.

Defendant Khalid Majeed ("Majeed") was a correctional officer at the Jail at all relevant times. In addition to the parties listed above, the following witnesses testified at trial: Matthew Leet and Jieire Vance, who were correctional officers at the Jail at all times relevant.

## II. Facts

On August 12, 2010, Whiteside was housed on sub-pod C of Unit 4D, the Jail's disciplinary unit when he had a disagreement with Majeed related to lunch service. Majeed, who was working first shift, delivered bag lunches to inmates on sub-pod C and retrieved the bags after inmates took their lunches out of the bag. The cell doors on Unit 4D contain a window and a trap door, also called the "food trap" or "food chute." Jail staff use the trap door, which is opened from the outside with a key, to pass items in and out of the cell.

The parties agree that on August 12, 2010, Majeed placed Whiteside's lunch bag on the ledge created by the open trap door, and then moved on to the next cell. Shortly thereafter, Majeed returned to retrieve Whiteside's lunch bag. Whiteside wanted to see a sergeant and placed his arms outside of the trap door which, while contrary to Jail rules, was a common practice in August 2010 when an inmate wanted to see a supervisor. Majeed attempted to close the trap door but Whiteside's arms prevented him from doing so. Vance, who had been distributing lunch bags on the upper tier, came downstairs and asked Whiteside to place his arms back in the cell. Vance told Whiteside that once he put his arms in the cell so the trap door could be closed, he could speak to a sergeant. As Majeed was closing the trap door, Whiteside's third and fourth fingers of his left hand were closed in the trap door, causing injury. Whiteside was transported to Froedtert Memorial Lutheran Hospital where his left hand was x-rayed. His two fingers were fractured and he received twenty-one stitches. Whiteside was prescribed Acetaminophen and Naproxen for two months due to the injuries. Majeed also received medical

2

treatment after the incident. He had scrapes on his arms, was prescribed antibiotics, and received a tetanus shot.

Other than what is set forth above, the parties dispute much of what occurred after Majeed distributed Whiteside's lunch bag.

Whiteside testified that after Majeed placed the lunch bag on the trap door ledge, Whiteside took two pieces of bread out of the bag and threw the bag out of cell into the hallway, which was his and other inmates' usual practice. When Majeed returned, he picked up Whiteside's lunch bag and dumped the remainder of the meal into his cell. Whiteside asked Majeed why he did that, jumped off his bed, put his arms out of the trap door, and told Majeed to get a sergeant. Majeed tried to close the trap door on Whiteside's arms. Whiteside tried to overpower Majeed to prevent him from closing the trap door. Majeed did not order Whiteside to put his hands inside the cell. Vance, who was standing nearby on the stairs, was laughing at Whiteside. Vance ordered Whiteside to place his hands inside the cell and said that then he could talk to a sergeant. Whiteside listened to Vance and started to remove his hands from the trap door area. He testified, "I removed my right hand from the trap. Put it back up in the cell. As I was putting my left hand up in the trap Deputy Majeed was pushing the trap up over, try [sic] to catch my fingers up in the trap with his knee too that pushed them up in there." (Trial Tr. at p. 29:13-17.) Majeed closed the trap by kicking it with his right knee and pushing it up with his two hands. Whiteside's fingers were caught in the trap and Vance had to open the trap door so that he could remove his fingers.

As indicated, Majeed's version of the incident differs. Majeed testified that he set the lunch bag on the trap door ledge and walked away, which was his usual practice. When Majeed returned fifteen to twenty seconds later to retrieve the lunch bag, Whiteside threw the bag containing the remaining food

3

at Majeed, which hit him in the leg, while yelling profanities at, and directing threats to, Majeed. Whiteside had his arms out of his cell to the elbow and stated he wanted to see a sergeant. Majeed wanted Whiteside to pull his arms in so he could close the trap door. After several minutes, Vance arrived and told Whiteside to pull his arms inside the cell so they could close the trap door, and they would then get a sergeant. Majeed told Whiteside he would get a sergeant. Whiteside continued to refuse, grabbed Majeed's right arm, dug his nails in, and scratched Majeed's arm. Then Majeed pulled his arm away and forcibly lifted up the trap door. Whiteside started to pull his arms in and his fingers were smashed in the chute, but they were not caught in the chute. When Whiteside saw the injury to his hand, he stated, "I got your ass now," squeezed blood out of his fingers, and wiped it on the cell door window. (Trial Tr. at p. 92:13.) Majeed went to Aurora Hospital for treatment for the scratches on his arm, where he received antibiotics and a tetanus shot.

     Vance testified that he was in subpod C on the top tier doing trash clean-up for lunch service when the incident with Whiteside and Majeed began. At first, Vance heard Whiteside yelling. When it escalated, he went downstairs by Whiteside's cell, stood off to the side, and asked Whiteside what was wrong. Whiteside said he was tired of being down there in Pod 4D, that he should have been out, and that he was ready to get out. Vance told him that if he remained calm for the remainder of the day, he would get out but that if he did not calm down and let them close the trap door he might end up being there longer. Whiteside said he was too agitated to calm down. Eventually, Whiteside told Majeed he would comply, and when Majeed went to lift up the trap door, at the last minute, Whiteside pushed the door back down, put his arms out, and dug his fingernails into Majeed's arms. Majeed closed the door and Whiteside's fingers were caught.

     Leet, who was in the control booth, testified that he witnessed the incident between Whiteside

4

and Majeed. Majeed asked Whiteside to close the chute and heard some loud conversation. Vance talked to Whiteside and tried to obtain compliance. Leet could not see exactly what happened because his view was blocked. However, after the incident, Majeed had scratches on his arm. The nurse arrived to examine Majeed's injuries. Leet and Vance took photos. Whiteside said, "I gotcha," and called Majeed a "fake-ass Muslim." (Tr. Tran. at p. 62:25 - 63:1.)

### III. Analysis

Whiteside contends that Majeed should be held liable for the use of excessive force in violation of the Eighth and Fourteenth Amendments. According to Whiteside, Majeed did not need to use force because Whiteside placed his arms outside of the trap door in an attempt to gain a supervisor's attention, a practice common among inmates, and not to threaten Majeed. Whiteside also denies yelling or verbally threatening Majeed. Whiteside contends that there was no need to use any amount of force; the extent of his injuries is evidence that Majeed's force was excessive; and Majeed did not attempt to temper his use of force. Whiteside further contends that Majeed could not have reasonably perceived him as a threat when he used force against him. Finally, Whiteside argues that he should recover compensatory and punitive damages for the violation of his constitutional rights.

Majeed contends that the force used against Whiteside was reasonable and necessary, and that he did not violate Whiteside's constitutional rights. According to Majeed, he closed the trap door in good faith to maintain discipline, not sadistically and maliciously to cause harm. And it is necessary to require inmates to keep their arms within their cells to protect inmates, officers, and civilian staff from harm. Majeed contends that the amount of force used to close the trap door was reasonably related to the need to maintain safety and order, he had reason to perceive a threat from Whiteside before he took action, and he made countless efforts prior to his forceful response to reduce the severity of the action.

5

He further contends that Whiteside is not entitled to any damages.

"The Fourteenth Amendment right to due process provides at least as much, and probably more, protection against punishment as does the Eighth Amendment's ban on cruel and unusual punishment," *Forrest v. Prine,* 620 F.3d 739, 744 (7th Cir. 2010); *see also Bell v. Wolfish,* 441 U.S. 520, 537 (1979); *Lewis v. Downey,* 581 F.3d 467, 473-74 (7th Cir. 2009). The central concern of that due process right is to ensure that the accused are not subjected to "excessive force that amounts to punishment," *Graham v. Connor,* 490 U.S. 386, 395 n.10 (1989). But not every use of force is a punishment: "Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention." *Bell,* 441 U.S. at 537.

When jailers are accused of using excessive force, the core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 7 (1992); *see Santiago v. Walls,* 599 F.3d 749, 757 (7th Cir. 2010). Several factors are relevant to this determination, including the need for force, the amount applied, the threat a guard reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury caused to the prisoner. *Hudson,* 503 U.S. at 7; *Fillmore v. Page,* 358 F.3d 496, 504 (7th Cir. 2004).

In this case, the testimony and other evidence submitted at trial lead the court to conclude that on August 12, 2010, Majeed used force against Whiteside to maintain and restore discipline. Although Whiteside denies yelling or making threats, the court credits Majeed, Vance, and Leet's testimony that Whiteside yelled at and threatened Majeed during the incident. Whiteside himself concedes that he was trying to "overpower" Majeed when the officer attempted to close the trap door. Additionally, the court concludes that Whiteside's testimony that Majeed never told him to pull in his arms is not credible. In

any event, Vance told him to pull in his arms. The fact that it was a common practice in 2010 for inmates to put their arms outside of their cells to summon a supervisor is largely irrelevant given that the practice was also against the rules and that, in this case, multiple officers repeatedly ordered Whiteside to pull his arms into the cell.

Whiteside suffered two fractured fingers that required twenty-one stitches and he was prescribed pain medication for two months after the incident. However, the injuries would not have occurred if he would have followed orders and placed his arms back in the cell. The court credits Majeed's testimony that Whiteside grabbed and scratched his arms. Although the scratches do not appear to have been significant, they were enough to require a trip to the hospital, tetanus shot, and antibiotics. Majeed's forceful closure of the trap door was a reasonable attempt to gain compliance and prevent further misconduct. *See Forrest,* 620 F.3d at 745-46 (concluding that officer's use of force was reasonable where detainee threatened aggression, disruption, and physical attack).

In sum, the court concludes that the evidence demonstrates that Majeed acted in a good faith effort to restore discipline, not maliciously and sadistically to cause harm. Thus, the court finds in favor of Majeed on Whiteside's excessive force claim.

**NOW THEREFORE IT IS ORDERED** that judgment be entered in favor of the defendant and against the plaintiff;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**.

Dated at Milwaukee, Wisconsin this 17th day of April 2013.

                **BY THE COURT**:

                s/ William E. Callahan, Jr.
                WILLIAM E. CALLAHAN, JR.
                United States Magistrate Judge